UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No.: 1:04-cv-10775-DPW

EVANGELIA BAKIS and PETER BAKIS,
         Plaintiffs,


         V.


PATRONS MUTUAL INSURANCE COMPANY OF
CONNECTICUT,
         Defendant.

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## I.    FACTS NOT IN DISPUTE:

### A. Complaint Allegations:

The underlying complaint, [Exhibit 1], states that in the early morning of February 3,

2002, the Plaintiff, Suzanne Kelly, a pedestrian, was struck on the West Roxbury Parkway by a

motor vehicle, and severely injured. The vehicle left the scene of the accident.

The complaint advances the following tort theories: (1) negligent operation of the

vehicle, against Nicholas Bakis ("Nicholas"), a minor, and his mother, Evangelia Bakis

(Evangelia") (Counts I and II); (2) negligent entrustment of the motor vehicle, to Nicholas, on

the part of Evangelia (Count III); negligent supervision of Nicholas, by Evangelia, and by

Nicholas' father, Peter Bakis ("Peter"), (Counts IV and V); civil conspiracy, by Nicholas,

Evangelia and Peter (Count VI); and intentional and negligent infliction of emotional distress by

the three defendants (Counts VII – XII).

The complaint alleges, alternatively, that the vehicle was operated by Nicholas Bakis or

by Evangelia. Evangelia is sued in her individual capacity, and also in her capacity as Trustee of

various trusts. The complaint further claims that Nicholas was operating the vehicle in violation of his restricted junior operator's license, MGL c.90, s.8, and that Nicholas and Evangelia left the scene without notifying the proper authorities about the accident, in violation of MGL c.90, s. 24(2)(a). The complaint alleges that one or more of the defendants, including Peter, failed to give notification of the identity of the owner and operator of the vehicle, for the purpose of evading criminal prosecution.

### B. Extrinsic Facts Obtained Through Discovery:

Nicholas had worked in the family's cleaning business that day. [Exhibit 3, Depo. Peter, Tr.56] Following work, Nicholas drove the cleaning business van to basketball practice, and then to his girlfriend's house in Tewksbury. [Exhibit 3, Depo. Peter, Tr.57] After picking up his girlfriend, Nicholas drove to Roslindale to attend a dance. Peter and Evangelia were also at the dance. [Exhibit 4, Depo. Evangelia, vol. I, Tr.34, 61] At approximately 11:00 p.m., Nicholas drove the Mercedes from the dance to drive his girlfriend back to Tewksbury. [Exhibit 4, Depo. Evangelia, vol. I, Tr.68]; [Exhibit 3, Depo. Peter, Tr.121] Peter gave Nicholas the Mercedes' keys. At that time, Evangelia owned the Mercedes, which had been given to her as a gift by Peter, but it was usually driven by Peter. [Exhibit 4, Depo. Evangelia, vol. I, Tr.68-69; vol III, Tr.161; [Exhibit 3, Depo. Peter, Tr.68-69] When Evangelia and Peter arrived home from the dance, shortly after 2:00 a.m., Nicholas was not there. He was still at his girlfriend's house. [Exhibit 4, Depo. Evangelia, vol. I, Tr.88]

Evangelia and Peter drove to Tewksbury to pick up Nicholas. Nicholas had a junior operator's license. M.G.L. c. 90, s. 8. Evangelia allowed her son to drive home from Tewksbury. [Exhibit 4, Depo. Evangelia, vol. I, Tr.110] Evangelia rode with him. She was seated in the front passenger seat. The accident occurred at approximately 4:15 – 4:30 a.m. on the West Roxbury

2

Parkway, near its intersection with Weld Street. [Exhibit 4, Depo. Evangelia, vol. III, Tr.59-60, 66]. See also, [Exhibit 4, Depo. Evangelia, vol. III, Tr.109 and Exhibit 5, Page 1, Police report of investigation] Evangelia denied that the interviewing officer asked her who was driving at the time of the accident. [Exhibit 4, Depo. Evangelia, vol. III, Tr.112]

Massachusetts State Police investigators traced the Mercedes to a garage at 297 Belgrade Avenue, in Roslindale. [Exhibit 5, Page 2, Police report of investigation] The vehicle was stored in a garage, behind closed doors that the Plaintiff alleges were newly-constructed. The registration plate was covered by cardboard. The 297 Belgrade Avenue location, at all times material to this action, was insured by Patrons under Policy # BOP9008359. The named insureds on that policy are The 297 Belgrade Avenue Trust and Evangelia Bakis. [Exhibit 2]

### C. Patrons Insurance Policies:

The following "Businessowners Special" insurance policies, Exhibit 2, each containing commercial liability coverage and issued by Patrons Mutual Insurance Company ("Patrons"), were in effect on February 3, 2002:

BOP9008357 – The 134 Belgrade Realty Trust;

BOP9008400 – The 273 Belgrade Realty Trust;

BOP9008359– The 297 Belgrade Realty Trust;

BOP9008401 – The 296 Belgrade Realty Trust; and

BOP9008358 – The 301 Belgrade Realty Trust

Evangelia Bakis is a named insured on each of these business policies. The term "insured" means "a. 'you' and 'your spouse', but only with respect to the conduct of a business of which you are the sole owner, if shown on the 'declarations' as an individual."

The Commercial Liability Coverage section of each of these policies contains the following exclusion:

"We" do not pay for "bodily injury", "property damage". "personal injury", or "advertising injury" that arises out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, "loading or unloading" of an "auto", aircraft, watercraft, or mobile equipment owned or operated by, rented to, or loaned to any "insured".

The "auto" exclusion is subject to an exception for "bodily injury" or "property damage" that arises out of autos or mobile equipment covered under the Mobil Equipment Coverage. The Mobil Equipment Coverage is limited to land motor vehicles used only on the insured's premises (including adjoining ways), or to equipment designed primarily for use off public roads, or to certain other specified construction type equipment not here applicable. Mobile equipment comprises vehicles incapable of operation on public roads (heavy construction cranes, for example); vehicles that are designed for use off public roads but can nevertheless be driven on public roads (farm tractors, bulldozers); and vehicles that would ordinarily be considered "autos" except that they are maintained for use solely on or ways adjacent to the named insured's premises (a farm pickup truck that is never driven off the farm). The operation or use of any such vehicle is a general liability, not an auto liability, exposure, and is covered under standard commercial general liability policies.

### D. Bakis' Declaratory Action:

The Plaintiffs herein, Evangelia Bakis and Peter Bakis, seek a declaratory judgment providing them with coverage under all of the Patrons policies. The Plaintiffs' Complaint also seeks recovery for breach of contract (Count I) and under M.G.L. c.93A (Count II).

4

## II.    ARGUMENT:

### A.  Summary Judgment Standard:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Compare, *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 711 (1991). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  The moving party must satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809 (1991); *Kourouvacilis*, 410 Mass. at 716. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment. *Mass.R.Civ.P. 56.*

Thus, when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.,* 475 U.S. at 588. Finally, substantive law determines the materiality of facts, and only "facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

In evaluating a motion for summary judgment, the motion judge must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. *Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 539 (1995).

### B. Analysis:

#### 1. Massachusetts law applies:

The auto accident took place in Massachusetts. Plaintiffs are residents of Massachusetts. The businesses for which the policies were written are located in Massachusetts. These facts warrant application of Massachusetts law.

#### 2. Interpretation of Policy Provisions.

The contractual issue raised by the claim made against the Patrons policies presents the Court with a question of law. Any residual factual dispute is largely irrelevant to the resolution of the applicability of those policies to the subject matter of that claim, since the allegations of the underlying civil complaint sufficiently set forth the circumstances under which the claim arose, the policies at issue are clearly identified and the record establishes that there is a live controversy between the parties. *Ruggerio Ambulance Service v. National Grange Insurance Co.*, 430 Mass. 794, 797 (2000)(The interpretation of an insurance policy is normally a question of law for the court.)

Construction of policy language is a question of law for the judge. *Jet Line Services, Inc. v. American Employers Insurance Co.*, 404 Mass. 706, 710 n. 5, (1989) (citing *Cody v. Connecticut*

6

*General Life Insurance Co.*, 387 Mass. 142, 146, (1982)). An insurance contract should be construed according to the "fair and reasonable meaning of the words in which the agreement of the parties is expressed." *Cody v. Connecticut General Life Insurance Co.*, 387 Mass. 142, 146 (1982) (citations omitted). The Court must interpret the clause as it is, not as it might have been. *Fried v Fried*, 5 Mass. App. Ct. 660, 663, n.4 (1977).

The insured has the burden of proving that its loss is within the description of the risks covered. *Markline Co., Inc. v. Travelers Ins. Co.*, 384 Mass. 139, 140 (1981). However, the applicability of exclusions must be proven by the insurer. *Murray v. Continental Ins. Co.*, 313 Mass. 557, 561 (1943). Exclusion provisions are strictly construed, with any ambiguity taken against the insurer. *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 282 (1997). Words in exclusionary clauses of insurance contracts should be construed "in their usual and ordinary sense." *Liquor Liab. Joint Underwriting Ass'n of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 320 (1995), quoting *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978). Common sense is not a stranger to the interpretation of insurance policies. *Smartfoods, Inc. v. Northbrook Property and Casualty Co.*, 35 Mass. App. Ct. 239, 245 (1993), citing *Wolov v. Michaud Bus Lines, Inc.*, 21 Mass. App. Ct. 60, 63 (1985).

**a. Duty to defend under policy.**

"It is the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend." *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.,* 40 Mass. App. Ct. 722, 727. A contrary result would allow a plaintiff to circumvent a bar to coverage by carefully drafting a complaint to avoid an exclusion. *Bagley v. Monticello Ins. Co.,* 430 Mass. 454, 459 (1999).

**b. Duty to indemnify.**

An insurer's duty to defend is broader than its duty to indemnify. *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. 366, 368 (1996). If an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify. *United Nat'l Ins. Co.* v. *Parish,* 48 Mass. App. Ct. 67, 70 (1999).

**3. Plaintiffs have not established that the Patrons Policies Cover the Activities Alleged in the Complaint.**

The crucial issue is the proper allocation of risks among the insurance policies involved in this action. *Phoenix Ins. Co. v. Churchwell*, 57 Mass. App. Ct. 612 (2002) (motor vehicle exclusion in homeowner's policy barred coverage). "There is no need to consider the coverage exclusions where there is no coverage to begin with." *Mitchell v. The Stop & Shop Companies, Inc.* 41 Mass. App. Ct. 521, 524 (1996).

Patrons insured several investment properties owned by the Plaintiffs. Patrons did not issue a commercial auto insurance policy to the Plaintiffs that covered the auto involved in the accident.

On the date of the accident, the auto was insured by a personal auto insurance policy that had been issued to the Plaintiffs by the Commerce Insurance Company. Nicholas was operating the auto at the time of the accident. Evangelia did permit Nicholas to operate that vehicle. Nicholas was a household member and an insured under the Commerce policy. The Plaintiff Evangelia Bakis was seated in the front passenger compartment. Her son was not an insured under any of the Patrons' commercial liability policies identified in the Plaintiffs' Complaint. At the time of the accident, the vehicle was being used to transport the occupants home from Nicholas' girlfriend's house.

8

The Plaintiff, Evangelia Bakis, appears to have been complicit in her son's commission of a criminal act, the leaving of the scene of the accident after causing bodily injury without making himself known. M.G. L. c.90, s.24(2)(a). The Plaintiffs appear to have been complicit in furthering the cover-up of this crime by secreting the auto and by furnishing a false accident report to their insurance agent. The report was intended for Commerce, under the auto insurance policy. At that time, the Plaintiffs made no report to Patrons, nor caused a report to be communicated to Patrons in connection with this accident.

The insuring agreement of the Patrons policy applies only to sums for which an insured becomes legally obligated to pay due to bodily injury "to which this insurance applies." Here, the Patrons policies clearly restrict liability coverage to occurrences that arise in connection with the operation and management of the insured properties.

The insuring agreement, common to each of the Patrons' policies, provides that Patrons would "pay all sums which an 'insured' becomes legally obligated to pay as damages due to 'bodily injury' . . . to which this insurance applies. The 'bodily injury' must be caused by an occurrence . . ." [Exhibit 2, AAIS BP-200 Ed 1.0, pg. 29, Commercial Liability Coverages, Principal Coverages, Coverage L]. "Occurrence", under the Patrons' policies, "means an accident and includes repeated exposure to similar conditions." [Exhibit 2, AAIS BP-200 Ed 1.0, pg. 25, Commercial Liability Coverages, Definitions]. "Accident" is not defined, but clearly, within the plain meaning assigned to common usage of the term, accident does not mean a purposeful conspiracy to conceal criminal activity. The ordinary and usual meaning of the term "accident", standing alone, does apply to bodily injury that is not intentionally caused. The term includes, but is not limited to, an occurrence caused by negligent conduct. "The term accident . . . should be given its ordinary meaning as denoting an unexpected, undesigned, and unintended

happening or a mishap and as including an event which, according to the common understanding of people in general, would rightly be considered as an accident." *J. D'Amico, Inc. v City of Boston*, 345 Mass. 218, 222 (1962).

The definitions section of the liability policy [1. "Who is an insured:"] restricts coverage to the business activities of the insureds. Here, the decisions made by the Plaintiffs, and actions subsequently taken, all fall within the ambit of family concerns, not business activity. Neither Evangelia, as a named insured, nor Peter, her spouse, as an insured, is covered for an accident outside the conduct of the business. The Plaintiffs have neither alleged nor explained why they believe that their parental decision in refusing to let their teenage son spend the night at his girlfriend's house, in the absence of her parents, constitutes "business conduct." Nor have they alleged, or explained, why they believe that their conduct in failing to contact the proper law enforcement authorities concerning the accident and in allegedly secreting the Mercedes from investigating law enforcement officials constitute actions within the scope of the business insured by the Patrons commercial liability coverage. The fact that the vehicle was placed inside a garage located on the Bakis' business premises does not bring their activities within the scope of business pursuits for which the Patrons policies were intended to provide coverage.

Negligent entrustment, as a distinct and specific cause of action, is derived from the more general concepts of ownership, operation, and use of a motor vehicle. *Barnstable County Mutual Fire Ins. Co. v. Lally*, 374 Mass. 602, 606 (1978). Negligent supervision of a minor son, while legally severable from those same general concepts, is likewise intertwined factually here to the ownership, operation, and use of the motor vehicle, and to parental concerns, but is not related to business pursuits. Certainly, there can be no reasonable expectation that the management of the

criminal imbroglio caused by leaving the scene of the accident falls within the risks protected by liability insurance related to the Plaintiff's business policies.

Just as a homeowner can reasonably be expected to rely on vehicular coverage for activities related to the ownership and operation of a motor vehicle unless a premium is paid for supplemental automobile insurance under the homeowner's policy, see *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 245 (1986), likewise that same expectation applies in the context of allocation of risk between a business owner's policy and a personal auto insurance policy.

### 4. Motor Vehicle Exclusion.

Where the terms of the exclusionary clause are plain and free from ambiguity, such terms are not construed strictly against the insurer. Rather, the words of the policy are construed in their usual and ordinary sense. *Barnstable County Mutual Fire Ins. Co. v. Lally*, 374 Mass. 602, 605 (1978). It is appropriate to consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993).

Here, the Patrons policies exclude payment for bodily injury that arises out of the ownership, operation, occupancy, supervision, use, or entrusting of an automobile owned or operated by, rented to, or loaned to any "insured". The expression "arising out of" indicates a wider range of causation than the concept of proximate causation in tort law. Cf., *Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704 (1996). Nor does it refer "to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle." Id. But here the pedestrian's injuries clearly arose out of the operation of a motor vehicle, and out of the alleged negligent entrustment of that vehicle by Evangelia to Nicholas.

11

**5. Intentional Acts Exclusion.**

The claims of intentional infliction of emotional distress, against Nicholas, Evengelia and

Peter Bakis, and the claim of civil conspiracy, are subject to the intentional acts exclusion

contained in the Patrons policies. The provision excludes from coverage bodily injury that is

intended by the insured, or is the result of intentional acts by the insured.

There are two forms of civil conspiracy in Massachusetts. See, *Wajda v. R.J. Reynolds*

*Tobacco Co.*, 103 F.Supp.2d 29, 37 (D.Mass. 2000)(setting forth the elements of civil

conspiracy). The first form, often called "true conspiracy", "occurs when the conspirators, acting

in unison, exercise a peculiar power of coercion over the plaintiff that they would not have had if

they had acted alone." *Id*. The second form, "ascribes liability to those who substantially assist or

encourage others to commit torts." *Id*. Under either form, proof of intentional conduct (as

opposed to negligence) is necessary. See *Rest. 2d. of Torts § 876.*

**6. Plaintiffs' Claim under M.G.L. c. 93A.**

An insurance company which in good faith denies a claim of coverage on the basis of a

plausible interpretation of its insurance policy is unlikely to have committed a violation of G. L.

c. 93A. *Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 613 (1987). Even if Patrons was mistaken

in its interpretation of the policy language, a plausible, reasoned legal position that may

ultimately turn out to be mistaken is outside the scope of the punitive aspects of c. 93A. *Guity v.*

*Commerce Ins. Co.,* 36 Mass. App. Ct. 339, 344 (1994).

**7. Plaintiffs' Breach of Contract Claim.**

For the reasons set forth above, Patrons has no duty to defend or indemnify the Plaintiffs

in the action brought by Ms. Kelly, under the terms and provisions of the "Businessowners

Special" insurance policies issued to the real estate trusts and Evangelia Bakis.

## III. CONCLUSION:

The Defendant Patrons Mutual Insurance Company of Connecticut respectfully requests that judgment issue, declaring that the Patrons has no obligation to defend or indemnify the Plaintiffs under the "Businessowners Special" insurance policies issued by Patrons to Evangelia Bakis and The 134 Belgrade Realty Trust, The 273 Belgrade Realty Trust, The 296 Belgrade Realty Trust, The 297 Belgrade Realty Trust, and The 301 Belgrade Realty Trust. Patrons further seeks summary judgment as to the Plaintiffs' claims for breach of contract (Count I) and under M.G.L. c.93A (Count II).

> Respectfully submitted,
> DEFENDANT, Patrons Mutual Insurance
> Company,
> By its Attorney,
>
> /s/ William F. Burke
> _____
> William F. Burke; BBO #065780
> ADLER POLLOCK & SHEEHAN  P.C.
> 175 Federal Street, 10th Floor
> Boston, MA  02110-2890
> (617) 482-0600

Dated:  August 18, 2005

*342658_1.doc*